ATLANTIC STEEL COMPANY, Continental Steel Corporation, Georgetown Steel Corporation, North Star Steel Texas, Inc., and Raritan River Steel Company, Plaintiffs,

v.

The UNITED STATES of America, Defendant,

and

Companhia Siderurgica De Guanabara and Companhia Siderurgica Belgo-Mineira, Intervenors.

Court No. 84-4-00536.

United States Court of International Trade.

Aug. 24, 1984.

Patton, Boggs & Blow, Washington, D.C. (Charles O. Verrill, Jr., Frank R. Samolis, Michael D. Esch, and Jennifer A. Hillman, Washington, D.C., of counsel), for plaintiffs, Continental Steel Corp., Georgetown Steel Corp., North Star Steel Texas, Inc., and Raritan River Steel Co.

Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C. (David E. Birenbaum, Alan Kashdan and Matt T. Morley, Washington, D.C., of counsel), for plaintiff Atlantic Steel Co.

Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., (Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, J. Kevin Horgan, Washington, D.C., of counsel), for defendant.

Wald, Harkrader & Ross, Washington, D.C., (Christopher A. Dunn, Washington, D.C., of counsel), for intervenors COSIGUA and Belgo-Mineira.

### Memorandum and Order on Plaintiff's Motion for Injunctive Relief

WATSON, Judge.

Plaintiffs have moved for a preliminary injunction enjoining the defendant from enforcing the Commerce Department's International Trade Administration's (ITA) Early Determination of Antidumping Duties [1] (Early Determination) made pursuant to 19 U.S.C. § 1673e(c), as well as returning dumping margins to the pre-Early Determination levels.

Plaintiffs allege that the ITA's Early Determination was not made in accordance with the law, resulting in the improper reduction of dumping margins from the approximately 65 percent level determined to exist in the ITA's Antidumping Duty Order to a revised level of approximately 6

[1]. 49 Fed.Reg. 14156 (1984).

percent proclaimed by the ITA in the Early Determination in question.

■ This Court finds that the plaintiffs are not entitled to an injunction that would return dumping margins to their pre-Early Determination level because such a remedy constitutes the ultimate relief plaintiffs are seeking. The Court does however, enjoin liquidations of the two August, 1983 entries that are encompassed within the ITA's Early Determination review.

Plaintiffs on September 30, 1982 filed petitions with the ITA and the International Trade Commission (ITC) alleging that carbon steel wire rod from Brazil was being sold in the United States at less than fair market value. The ITA and ITC made affirmative final determinations (48 Fed. Reg. 43202 (1983) and 48 Fed.Reg. 51178 (1983)) and an Antidumping Duty Order was published by the ITA in the Federal Register on November 16, 1983. 48 Fed. Reg. 52110 (1983). This Antidumping Duty Order directed United States Customs officers to require cash payment of estimated duties of 49.61 percent for future importations of carbon steel from Cosigua and 76.49 percent when importations from Belgo-Mineira occur.

On November 19, 1983 Cosigua and Belgo-Mineira requested that the ITA make an Early Determination and waive the cash deposit requirement mandated by the ITA's Antidumping Order. The ITA published notice of its intent to make an Early Determination on December 19, 1983. 48 Fed. Reg. 56098 (1983). Subsequently the ITA published its Early Determination of antidumping duty on April 10, 1984. 49 Fed. Reg. 14156 (1984). 19 U.S.C. § 1673e(c) requires that an early determination, determine the foreign market value and the United States price for all merchandise of such manufacturer, producer, or exporter described in that order which was entered, or withdrawn from warehouse, for consumption on or after the date of publication

of an affirmative preliminary determination by the ITA under 19 U.S.C. § 1673b(b) and before the date of publication of the affirmative final determination by the ITC under 19 U.S.C. § 1673d(b).

The ITA's Early Determination was based on one export sale to the United States made by each of the intervenors in August, 1983 and home market sales made 15 days before and after the two export sales. As a result of its Early Determination the ITA recalculated dumping margins of 7.43 percent for Cosigua and 0 percent for Belgo Mineira. On April 16, 1983 the ITA instructed the Customs Service to liquidate the two August, 1983 entries encompassed within its Early Determination.

Plaintiffs claim that without a preliminary injunction enjoining the Early Determination from taking effect, as well as an injunction returning dumping margins to the higher level expressed in the ITA's Final Dumping Order, they will suffer irreparable injury from lost sales and foregone profits resulting from entries made on or after the publication of the Early Determination.

Plaintiffs allege that the Early Determination failed to take into account evidence contained within the administrative record of increases in October and November, 1983 in home market prices of approximately 20 percent, above the August prices examined in the Early Determination and offers of sales to the United States by intervenors in October and November, 1983 at prices substantially below the two export sales occurring in August, 1983, examined by the ITA in its Early Determination. Plaintiffs also contend that the Early Determination was not made in accordance with the law because it was not concluded within 90 days. Additionally, plaintiffs allege that the radical reduction in dumping margins expressed in the Early Determination, resulted solely because of a devaluation of Brazilian currency that took place in early 1983 and that any change in dumping margins occurring because of this devaluation is contrary to law.

The defendant and intervenors claim that the Early Determination was made in accordance with the law and supported by substantial evidence. Although the intervenors contest the issuance of a preliminary injunction in any form, the defendant is willing to consent to an injunction enjoining liquidation of the two August, 1983 entries.

In order to preserve the status quo this Court is authorized to grant injunctive relief. 28 U.S.C. § 2643(c). Plaintiffs must establish the following four elements in order to prevail on its motion for a preliminary injunction:

(1) that they will be immediately and irreparably injured

(2) that there is a likelihood that they will succeed on the merits

(3) that the public interest would be better served if the relief requested was granted

(4) that the balance of hardships on all the parties favors the moving party.

Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir.1983).

While this Court is required to consider all four factors, a flexible approach has been adopted in which the moving party's burden of persuasion on its likelihood of success on the merits, is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief. American Air Parcel v. United States, 1 CIT 293, 515 F.Supp. 47 (1981). "The critical factors are the probability of irreparable injury to the movant should the equitable relief be withheld and the likelihood of harm to the opposing party if the Court were to grant the interlocutory injunction." American Air Parcel v. United States, at 299–300, 515 F.Supp. 47.

After examining all four factors this Court holds that during the pendency of this action an injunction is required enjoining liquidation of the two August, 1983 entries.

▉ The consequences of liquidation of entries involved in an agency determination

occurring prior to judicial review of that determination has been deemed to constitute irreparable injury to a party moving for injunctive relief. *Zenith Radio Corp. v. United States, supra.* Entries encompassed within an Early Determination investigation are subject to assessment and liquidation at any time after the publication of the Early Determination. 19 U.S.C. § 1673e(c). *See also Smith Corona v. United States,* 1 CIT 89, 507 F.Supp. 1015 (1980).

The plaintiffs have made a sufficient showing that they will prevail on the merits. The possibility of liquidation of the two August, 1983 entries occurring prior to judicial review of the Early Determination, particularly in light of the ITA's order of April 16, 1983 directing the Customs Service to liquidate those two entries, would constitute irreparable harm to the plaintiffs as well as counterbalance any harm that would occur to intervenors or the defendant, because of the issuance of an injunction. Moreover, this Court concludes that the public interest would best be served if an injunction was granted preventing liquidation of the two August, 1983 entries in order to insure proper enforcement of United States antidumping law.

For the aforementioned reasons, the August, 1983 entries are enjoined from liqui-

**2.** 49 Fed.Reg. 14156 (1984).

dation until such time as the action is decided on the merits. This Court, however, is unwilling to return dumping margins to their pre-Early Determination levels of approximately 67 percent because the issuance of such relief would be tantamount to the ultimate relief plaintiffs are seeking. *Smith Corona v. United States, supra.*

At the present time, this Court is unwilling to consider the question, whether during the pendency of this litigation, entries that occur after the publication of the Early Determination should be enjoined from liquidation until plaintiffs make a specific request for such relief and evidence is presented to the Court that such entries have occurred or are likely to occur in the near future.

It is hereby ORDERED that during the pendency of this litigation that the defendant including all agents, servants and employees of the Customs Service are enjoined from liquidating the two August, 1983 entries of carbon steel rod referred to in the ITA's Early Determination made on April 10, 1984.[2]